UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        Case No. _____

LUZ NARANJO,

        Defendant.

---

### PLEA AGREEMENT

---

1. The United States of America, by its attorneys, Brad D. Schimel, United States Attorney for the Eastern District of Wisconsin, and Zachary J. Corey and Kevin C. Knight, Assistant United States Attorneys, and the defendant, Luz Naranjo, individually and by attorney Craig W. Albee, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a one-count information, which alleges a violation of Title 18, United States Code, Section 371.

3. The defendant has read and fully understands the charge contained in the information. She fully understands the nature and elements of the crime with which she has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

**THE UNITED STATES ATTORNEY CHARGES THAT:**

1. At all times material to this Information:

    a. Waupun Correctional Institution ("WCI") was a maximum-security prison located in the Eastern District of Wisconsin which was operated by the Wisconsin Department of Corrections ("WIDOC").

    b. WIDOC was an agency of the State of Wisconsin that received federal assistance in excess of $10,000 during the one-year period beginning on or about July 1, 2022, and ending on or about June 30, 2023.

    c. LUZ NARANJO, an agent of WIDOC, was employed as a Correctional Officer at WCI.

## COUNT ONE
**Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds
(Violation of 18 U.S.C. § 371)**

2. Between about April 11, 2023, and about May 25, 2023, in the Eastern District of Wisconsin and elsewhere,

**LUZ NARANJO**

did knowingly and willfully conspire and agree with other persons both known and unknown to commit an offense against the United States, namely: NARANJO, as an agent of WIDOC, a state agency that received federal benefits in excess of $10,000 in any one year period, did corruptly solicit, demand, accept, and agree to accept for the benefit of any person, things of value, intending to be influenced and rewarded in connection with any business, transaction, and series of

transactions of WIDOC involving anything of value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## PURPOSE OF THE CONSPIRACY

3. It was a purpose of the conspiracy for NARANJO to corruptly enrich herself by soliciting and accepting money from a WCI inmate, and associates of a WCI inmate, through bribe payments in exchange for smuggling contraband into WCI.

## MANNER AND MEANS

4. The conspiracy was carried out through the following manner and means, among others:

    a. A WCI inmate offered and gave NARANJO, and NARANJO solicited and accepted, bribe payments that were paid through United States currency ("cash").

    b. In exchange for the bribe payments, NARANJO smuggled contraband into WCI, including cellular phones, tobacco, and controlled substances.

## OVERT ACTS

5. In furtherance of the conspiracy and to accomplish its unlawful objects, NARANJO and others both known and unknown performed and caused to be performed the following overt acts, among others, in the Eastern District of Wisconsin:

    a. On or about May 1, 2023, NARANJO received a bribe payment of $3,000 cash for smuggling contraband into WCI, which she deposited into two of her bank accounts.

    b. On or about May 8, 2023, NARANJO received a bribe payment of $3,000 cash, for smuggling contraband into WCI, which she deposited into her bank account.

    c. On two occasions, between about April 11, 2023, and about May 8, 2023, NARANJO met and received contraband from associates of WCI inmates outside of WCI.

    d.  On two occasions, between about April 11, 2023, and about May 8, 2023, NARANJO smuggled the contraband received from the associates of WCI inmates into WCI.

    e.  On two occasions, between about April 11, 2023, and about May 8, 2023, NARANJO delivered the contraband to a WCI inmate by pushing a supply cart near an inmate's cell and giving that inmate the contraband instead of sanctioned supplies from the cart.

  All in violation of Title 18, United States Code, Section 371.

  6.  The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in Paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt:

  Waupun Correctional Institution (WCI) is a state-run, maximum-security prison located in Waupun, Wisconsin, which is in the Eastern District of Wisconsin. WCI is a facility operated by the Wisconsin Department of Corrections (WIDOC).

  In the fiscal year period from July 1, 2022, to June 30, 2023, the Wisconsin Department of Corrections received over $10,000,000 in federal grants including the Wisconsin Department of Justice Victim of Crime Act Federal Fiscal Year 2023 Grant.

  Naranjo was hired as a Correctional Officer at WCI on March 1, 2020, and was an agent of WIDOC until she was placed on administrative leave on May 25, 2023.

  Between April 11, 2023, and May 25, 2023, Naranjo received two bribe payments totaling $6,000 in United States Currency ("cash") from WCI inmates and associates of WCI inmates to smuggle contraband into WCI.

  In April and May 2023, Naranjo began communicating with Inmate A. They had regular contact through a contraband telephone that Inmate A possessed and the Facebook social media platform. This type of contact was against regulations at WCI. Individual A was not incarcerated and a "cousin" of Inmate A. Inmate B was friends with Inmate A. Individuals B and C were not incarcerated and were associates of Inmate B. Inmates A and B, and Individuals A, B, and C all coordinated with Naranjo to provide Naranjo with cash bribe payments and contraband to smuggle into WCI. In coordination with these individuals, Naranjo received bribe payments and smuggled contraband into WCI. On one occasion, Naranjo warned Inmate A about an impending search of Inmate B's prison cell.

Once Naranjo smuggled the contraband into WCI, she pushed a supply cart to Inmate A's cell and handed him the contraband instead of the sanctioned supplies on the cart.

On May 7, 2023, Naranjo deposited a $3,000 bribe payment into her bank account. She received this bribe payment for smuggling controlled substances into WCI on May 6, 2023.

Additionally, Naranjo deposited a $3,000 bribe payment into two separate bank accounts on May 1, 2023, for smuggling contraband into WCI.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 5 years and $250,000. Each count also carries a mandatory special assessment of $100 and a maximum of 3 years of supervised release.

8. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of conspiracy as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

First, a conspiracy to commit bribery concerning programs receiving federal funds existed;

Second, the defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy; and

Third, one of the conspirators committed an overt act in an effort to advance a goal of the conspiracy.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 5. The defendant acknowledges and agrees that her attorney in turn has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false,

incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

### Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 14 under Sentencing Guidelines Manual § 2C1.1.

17. If the sentencing court determines that the defendant does not have any criminal history points and otherwise meets all of the criteria listed in Sentencing Guidelines Manual § 4C1.1(a), then the government will agree to recommend to the sentencing court that a 2-level decrease is applicable pursuant to § 4C1.1(a) of the Sentencing Guidelines.

### Specific Offense Characteristics

18. The parties agree to recommend to the sentencing court that a 2-level increase for more than one bribe under Sentencing Guidelines Manual § 2C1.1(b)(1) is applicable to the offense level for the offense charged in Count One.

19. The parties acknowledge and understand that the government will not recommend any increase under Sentencing Guidelines Manual §§ 2C1.1(b)(2) & 2B1.1(b)(1)(D) because the parties agree that the dollar amount of bribes received by the defendant is $6,000.

## Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

21. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

22. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

23. The government agrees to recommend a sentence within the sentencing guideline range contemplated by this agreement, which is 8-14 months.

## Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the

8

sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

26. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

27. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form.

### Fine

28. The parties agree to recommend to the sentencing court that no fine be imposed against the defendant.

### Special Assessment

29. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

9

## DEFENDANT'S WAIVER OF RIGHTS

30. In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not she was persuaded of defendant's guilt beyond a reasonable doubt.

    d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e. At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

31. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to her and the consequences of his waiver of these rights. The defendant further acknowledges thaft as a part of the guilty plea hearing, the court may question the defendant

10

under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

32. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

33. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### MISCELLANEOUS MATTERS

35. By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material (other

11

Case 2:25-cr-00241-LA    Filed 12/11/25    Page 11 of 14    Document 2

than information establishing the factual innocence of the defendant), including Jencks Act material, material pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and impeachment material pursuant to Giglio v. United States, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

## GENERAL MATTERS

36. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

37. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

38. The parties acknowledge, understand, and agree that the United States is free to notify any local, state, or federal agency of the defendant's conviction.

### Further Action by Internal Revenue Service

39. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

### EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense

based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

41. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 12/5/25

LUZ NARANJO
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 12/5/2025

CRAIG W. ALBEE
Attorney for Defendant

For the United States of America:

Date: 12/10/2025

BRAD D. SCHIMEL
United States Attorney

Date: 12/10/2025

ZACHARY J. COREY
KEVIN C. KNIGHT
Assistant United States Attorneys